**RITCHEY FLYING SERVICE, Inc.**

v.

**The UNITED STATES.**

No. 126–53.

United States Court of Claims.
Nov. 7, 1956.

Ernest May, Fort Worth, for plaintiff.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This is a strange case. The plaintiff operated a flying school which was originally established about 1928 by Edwin W. Ritchey, and later incorporated. It was one of the first schools approved for the training of World War II veterans under the Servicemen's Readjustment Act of 1944, 58 Stat. 284, 38 U.S. C.A. § 693 et seq. It had several contracts which were carried out after approval in the regular way between 1947 and 1948, and payments were made thereon.

In 1950, some two years after the purported services were rendered, plaintiff made application for payment for the training of an additional 50 veterans.

The claim arose in this way: in 1950 Edwin W. Ritchey discovered in the school files or in the desk of his manager these applications for training which had never been forwarded to the Veterans Administration. During the period in which the services had been rendered a Mr. Thomas was office manager of the school and agent of the plaintiff. He had been doing considerable drinking and also, it later developed, had embezzled some of the funds of the school. Through oversight or carelessness Mr. Thomas had failed to send these applications by veteran students to the Veterans Administration for approval. Consequently no approvals had been had and no payments had been made to cover the training of those particular students.

Mr. Thomas testified to these facts at the hearing before the trial commissioner. It also developed that he was gradually repaying the money which he had taken from the school.

The Veterans Administration was not apprised of the fact that these veterans had been in training until 1950 when vouchers for the payment of tuition were received by the regional office. Payment was refused. The refusal was based on the failure of plaintiff to furnish the information for the proper processing of its claim and the failure of an employee of plaintiff to perform his routine duties, and the fact that the Government was not at fault.

Plaintiff concedes that the failure to process in the regular way was the fault of its own organization. It says, nevertheless, that it gave honest and regular training to these students and that the whole purpose of the training program was accomplished; that under the other contracts all the applications had been approved, and that the Government was not injured by the failure of the plaintiff to submit the veterans' applications for approval during the time when the services were rendered or within a reasonable time thereafter.

A veteran desiring training was required to file a formal application. If found eligible for training he was issued a certificate of eligibility which he filed with the training school.

Prior to 1948 the regulations did not provide that the certificate of eligibility should be obtained before training began; in fact, often the student began training and the certificate would be issued later. There were many millions to be trained. In the rush many of them went directly to the school of their choice and began training. The approved schools were furnished the forms and they had the veterans fill out the applications and these were sent to the Veterans Administration for approval after the training had begun. The regulations which were issued in 1945 and which are set out in finding 3 provided that the applications were to be forwarded to the Veterans Administration promptly, but they did not set out any particular time within which the applications must be approved. In fact, payment was frequently not made until after the training had been completed.

On November 27, 1948, supplemental section 21.2 to the regulations was issued. Subdivision (e) of this particular supplement stipulated that if formal application was not presented prior to the cessation of a course, benefits should not be allowed, and that benefits should be allowed only for the course pursued in the period immediately preceding the date of the formal application and then only if a valid informal application had been established to cover the course. One or two of the trainees involved in this suit came under the ban of this particular supplemental regulation, and therefore plaintiff can in no event recover for such training.

Plaintiff's original claim was for 50 trainees. Its books were audited by a representative of the Veterans Administration. The audit established that plaintiff provided instruction, training and essential text books for authorized courses of study and that the school provided such instruction and training to numerous veterans besides those involved in the case at bar. Altogether 178 of such veterans were ultimately licensed and given ratings as pilots by the Civil Aeronautics Board.

The books of the plaintiff showed that the school furnished flying training and instruction to the veterans named in our finding 8.

It is the defendant's position that none of these claims should be paid; that the Veterans Administration had no chance to check the authenticity of the work nor the identity of the students named; that it was wholly the fault of the plaintiff that the opportunity was not afforded the Veterans Administration to check on these matters, and that therefore payment should not be made regardless of whether the service was actually rendered.

If this were a fly-by-night school or one that was organized originally for the training of veterans, or if there had been any question at any time as to the

standing of the school or the character of the training which this particular school had been giving, we would accept defendant's position without question. But this school was established many years before the call for veterans' training. We have no doubt that regular training was given to a number of these veterans on which plaintiff's claim is based. However, since the books were kept under the supervision of a man who was at least to some degree discredited, we do not believe that they should be accepted as final proof, even though it is probable that they reflect the training that was actually given. At the same time the school undoubtedly furnished training, including books, supplies and other equipment, to several of the students that were shown to be eligible. The Government accomplished the full purpose of this training program and in view of its previous experience with the school it undoubtedly would have approved the applications and issued the certificates had they been filed during the period of training or soon thereafter.

We have gone through the list of names set out in finding 8 to determine whether or not the Civil Aeronautics Board issued private or commercial licenses to the individuals named in the list. Several on this list did not indicate where they had received their training. In one or two instances the claims are barred by the statute of limitations. One or two others had received training after the regulations of 1948 had been issued and therefore cannot be included. Some of them appear to have been ineligible for training under the Servicemen's Readjustment Act, supra.

In the table below are set out the names of students shown by plaintiff's books to have received training, the period of such training, and the charge therefor. This training was given before the issuance of the 1948 regulations which required the approval of the application and the furnishing of the eligibility certificate before the training period was completed. These 7 men were each granted a pilot's license by the Civil Aeronautics Board following their training. The records of the Civil Aeronautics Board show that they received their training at Ritchey Flying Service. This it seems to us completely establishes the fact that plaintiff's books, at least as to these 7 students, are accurate.

| Name | Value of service rendered | Date of instruction |
|---|---|---|
| Charles S. Barnhart | $1,060.48 | Apr. 5–Oct. 13, 1948. |
| Lewis Bennett | 270.10 | Nov. 3–Dec. 16, 1947. |
| Stephen J. Brackley | 1,150.90 | Mar. 1–Oct. 3, 1948. |
| Wilford D. Lewis | 733.16 | Nov. 1–Dec. 20, 1947. |
| Leon J. Long | 370.67 | May 24–July 26, 1948. |
| Robert E. Mizer | 137.75 | Apr. 2–27, 1948. |
| D. E. Rowan | 891.00 | Mar. 11–Apr. 9, 1948. |
| | 4,614.06 | |

We are inclined to believe that the other students who are shown on plaintiff's books were each given some sort of training at plaintiff's school and probably in most instances the amount and character of training claimed, but in the circumstances we do not feel that plaintiff should be given full credit for the records that were made in the manner indicated heretofore and under the circumstances that have been described.

As to the 7 men listed above, however, we have not the slightest doubt that the training was given by the school in the

manner indicated. When the records of the school are laid alongside the pilots' licenses and certificates issued by the Civil Aeronautics Board following such training the record becomes complete. We think in good conscience the plaintiff should be allowed to recover these amounts. The facts are firmly established as to these 7 students as to their eligibility, as to the training they received and as to the issuance of pilots' licenses, and therefore we do not think that to allow recovery in a case as clear as this would in any sense open the door for the establishment of unjustified claims on the part of other schools.

Plaintiff is entitled to recover the sum of $4,614.06.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent for the following reasons: I do not think recovery in this case depends upon the fact that the school was not a "fly-by-night" school, or that its agent was a drunkard. The only question, in my opinion, is whether or not the plaintiff is bound by the contracts, law, and regulations pertaining to education of veterans.

The contracts between plaintiff and the Veterans Administration were to provide training for veterans under the provision of Public Law 346, 58 Stat. 284, 287. The regulations promulgated thereunder by the Veterans Administration, required approval of the veteran's application before payment, and provided that payment begin on the date the veteran was authorized for training.

The reasons for the regulations are quite apparent. During the period in question thousands of veterans were receiving training in hundreds of schools. It appears that most of the schools bore a splendid reputation for honesty in presentment of claims and quality of training. However, some schools did not enjoy such a savory reputation. This made it quite necessary that something be done to protect the Government and taxpayers from paying costs of training when in truth and in fact the veterans were not enrolled, or had withdrawn from school thereafter. Thus the regulations as set out in the findings of fact were promulgated, giving the Government an opportunity to check the records against the claims made by the various institutions. I can find nothing unreasonable about the regulations; on the contrary, they are not only reasonable and necessary, but are strictly in conformity with the statute. Moreover, I can see no reason for not applying the regulations to "good" schools and applying them only to "bad" schools.

The only excuse offered by plaintiff for not complying with the regulations was that during the period in question plaintiff's office manager was doing a bit of drinking and was embezzling some of the funds of the school. I know of no statute or rule of law by which the bad habits of plaintiff's employees can be imputed to the Government.

None of the veterans for whom claim is made ever received authorization for training as required by the contracts and applicable regulations.

I would dismiss plaintiff's petition.